# CASES DETERMINED

## *August Term, 1880.*

---

WILLIAMS vs. THE WESTERN UNION RAILWAY COMPANY.

*April 3 — September 21, 1880.*

*(1) " Right of way " defined.   (2) Deed construed.*

1. A "right of way," in its legal and generally accepted meaning in reference to a railway, is a mere *easement* in the lands of others, obtained by lawful condemnation to public use, or by purchase.

2. Defendant procured to be condemned, for the use of its railroad, a strip of land through the south half of a certain block 58, 4½ rods wide, of which two rods in width were west of the center of its track.   Afterwards it obtained a deed, from one F., of "a strip of land six rods in width, for the uses and purposes of said railroad company, along the line of their road as at present [then] located [through the south half of said block], and also all the land in the south half of said block situated west of the route of said road."   Afterwards it deeded to one E. "all of that portion of block 58 which lies west of and beyond the western boundary of the *right of way* of said company's railroad as the same is *located* and *established*."   *Held,*

   (1) That the eastern line of the land granted to E. is a line two rods west of the center of defendant's track, i. e., the west boundary of the land *condemned* for its use.

   (2) That there is an incurable uncertainty in the description of the strip six rods wide conveyed to defendant by F.

APPEAL from the Circuit Court for *Racine* County.

Ejectment, for a strip of land about a rod wide in block 58 in the school-section addition to the city of Racine.   Said

strip lies parallel to defendant's railway through that block, its nearest boundary line being two rods distant from the center line of defendant's track.

The evidence introduced by the parties is sufficiently stated in the opinion. The court submitted it to the jury to determine, from all the evidence, whether the defendant company, prior to the date of its deed to one Engerud under which plaintiff claims, had acquired a right of way three rods in width west of its track; and instructed them that if so the defendant was entitled to their verdict. There was a verdict for the plaintiff; a new trial as for errors assigned was refused; and the defendant appealed from a judgment on the verdict.

The cause was submitted for the appellant on the brief of *Henry T. Fuller:*

The report of the commissioners in the condemnation proceedings should have been excluded. Such commissioners had no power to adjudicate upon the extent of the company's right of way, and their report was not competent evidence of the boundaries thereof. *Ford v. R'y Co.*, 14 Wis., 609; *Pettibone v. R'y Co.*, id., 443; *Brown v. R'y Co.*, 5 Gray, 35. Even if such report and the judgment thereon were conclusive of the extent of the right of way at that time, they did not bar the company from subsequently adding thereto by the purchase of further lands. And the evidence shows that this was, in fact, done — that the premises in question were purchased of Fratt and became a part of the right of way of defendant's road, before the conveyance to Engerud. This evidence was admissible to fix the boundaries of the right of way at the time of the deed to Engerud, they not being determined by that instrument. Dart on Vend. & Pur., 452; *Mason v. White*, 11 Barb., 173; *Stone v. Clark*, 1 Met., 378; *Allen v. Kingsbury*, 16 Pick., 239; 2 Hill. on R. P., 346; *Helmholz v. Everingham*, 24 Wis., 266. And it shows that the right of way then included the premises in dispute, and

that the plaintiff had notice of such fact by the record of the deed from Fratt. The existence of a fence within the defendant's right of way at or since the time of the conveyance to Engerud does not estop the company from claiming beyond such fence to the real boundary of its right of way. *Warner v. Fountain*, 28 Wis., 405. The premises were not included in the deed to Engerud, and the plaintiff acquired no title thereto by occupation adverse to the defendant, such adverse possession having continued for less than twenty years. *McEvoy v. Loyd*, 31 Wis., 142; *Stevens v. Brooks*, 24 id., 326; *Warner v. Fountain*, 28 id., 405; *Crary v. Goodman*, 22 N. Y., 170. It was error to submit to the jury for construction the written instruments and records introduced in evidence. This was matter of law for the court. 2 Hill. on R. P., 363, note *a; Becton v. Chestnut*, 4 Dev. & B., 335; *Frier v. Jackson*, 8 Johns., 496, 515; *Mason v. White*, 11 Barb., 186; *Allen v. Ins. Co.*, 5 Gray, 384; *Ranney v. Higby*, 5 Wis., 62; *Rogers v. Bradford*, 1 Pin., 418; *Helmholz v. Everingham*, 24 Wis., 266; *Farnsworth v. Brunquest*, 36 id., 202.

*John T. Fish*, for the respondent:

The deed to Engerud must be construed favorably for the grantee. It conveys the land west of the west boundary of the right of way of grantor's railroad "as the same is located and established." The records show no other location or establishment of such right of way than that by the commissioners, fixing the western boundary line thereof two rods from the center of the track. The deed from Fratt does not attempt to locate or establish the boundaries of the right of way. At the time of the conveyance to Engerud, the company had built a fence two rods west of its track, and was occupying as right of way only up to that line. That line must therefore be held to be that intended by the parties to such conveyance. In this view of the case it is immaterial that the court left to the jury the construction of the deeds and the decision of questions of law.

The following opinion was filed April 20, 1880.

ORTON, J.   The defendant company, in 1854, procured a right of way through the south half of block 58, in the school section addition to the village, now city, of Racine, by the condemnation, according to law, of a strip of land along the then located track of their road, four and one-half rods in width, two rods of which were west of the center of said track.   In 1855 the company obtained, by deed of one Fratt, "a strip of land six rods in width, for the uses and purposes of said railroad company, along the line of their road as at present [then] located [through the south half of said block]; and also all the land in the south half of said block, situated west of the route of said road."   In 1857 the company deeded to one Engerud "all of that portion of block 58 which lies west of and beyond the western boundary of *the right of way* of said company's railroad, as the same is *located* and *established*."   In 1869 Eugerud deeded to the plaintiff "the south half of all that part of said block which lies west of the *western boundary line* of the Western Union Railroad Company's *right of way*."

The company claims a strip of land one rod in width, west of the western boundary line of their original right of way, through the south half of said block, by virtue of the grant of the six-rod strip of land in the Fratt deed of 1855, and took possession of the same; and the plaintiff claims and seeks to recover said strip by virtue of the company's deed to Engerud, of 1857.   The report of the commissioners in the condemnation proceedings of 1854, and its confirmation by the circuit court, and all of the above deeds, were introduced in evidence.   There was much other evidence given, on behalf of both parties, in respect to the former use, possession and fencing of this rod strip; and certain resolutions of the board of directors of the company, and certain maps and plats of the company and of the city of Racine, showing the

right of way of the company through the south half of block 58, were also introduced in evidence.

We think that this evidence was clearly incompetent as affecting the construction of any of the above deeds, or the location and boundary of any of the parcels of land conveyed. It is at least questionable, in a case where title is not claimed by an adverse possession of twenty years, whether the company would be estopped by enclosing only a part of their right of way, and tacitly allowing the possession and use of the residue by others for a considerable length of time. *Warner v. Fountain*, 28 Wis., 412. And certainly any such evidence could not affect the construction of deeds or the title conveyed by them. The resolutions of the board of directors of the company, before the right of way was obtained, and the maps and plats of the company or of the city, made afterwards, could not affect in any respect the right of way of the company over the lands of others, or their title to lands acquired by purchase; for the first must depend solely upon the proceedings of condemnation in 1854, and the latter upon the Fratt deed of 1855.

This evidence was not only incompetent, but it was well calculated to confuse the case and cause the error complained of, of submitting the whole issue to the jury upon all the evidence, both record and parol, which involved the construction of the deeds, which was the exclusive province of the court. *Farnsworth v. Brunquest*, 36 Wis., 202. But as the verdict was general, and, as we think, correct, and this error, if one, has not prejudiced the appellant, it will be disregarded, and especially where both parties were in fault in conceding the competency of such evidence, which involved questions of fact proper to be submitted to a jury rather than to be determined by the court.

The construction of the deed of the company to Engerud is not difficult or doubtful. The western boundary line of the *right of way* obtained in 1854 is fixed and certain.

"Right of way," in its strict meaning, is "the right of passage over another man's ground;" and in its legal and generally accepted meaning, in reference to a *railway*, it is a mere easement in the lands of others, obtained by lawful condemnation to public use or by purchase. Mills on Em. Dom., § 110. It would be using the term in an unusual sense, by applying it to an absolute purchase of the fee simple of lands to be used for a railway or any other kind of way. The authorities cited by the learned counsel of the appellant to show that the location and boundaries of the right of way are not determined by the commissioners who are appointed to assess the damages and compensation by reason of its having been taken, do not meet the point here. The appointment of commissioners on the petition of the company to assess such damages and compensation, and their report of such assessment and its confirmation, are proceedings for the lawful condemnation of lands already taken, located and designated, and described in the petition; and such proceedings, together with the payment or proper security of the assessment, constitutes the only evidence of the right of the company to the lands so taken, and not only the best but really the only evidence of the company's title. The report being the evidence of the exact western boundary line of the company's right of way, it is not difficult to determine the *east* line of "all that portion of block 58 which lies west of and beyond the western boundary of the *right of way* of said company's railroad, as the same is *located* and *established*."

From this description the boundary is an absolute certainty, and there is no room for construction. The title which the company obtained to the six-rod strip by the Fratt deed, in 1855, is not title to a right of way, but title in fee simple; and, as we have said, it cannot properly be called a right of way. But if admitted to be a right of way, where is its location, and what are its boundaries? To change or destroy the

absolute certainty of the above description in the commissioners' report, and in the deed of the company to Engerud, these should be equally as certain.

The opposing counsel in this case differ very widely as to the location and boundaries of this six-rod strip. The learned counsel of the appellant contends that its western boundary is one rod west of the original right of way, which would make the strip three rods east and west of the center of the railroad track. This would cover the land already obtained by the proceedings of condemnation.

The learned counsel of the respondent contends that all of this six-rod strip must lie east of the railroad track, because in the same deed the company obtains title to all of the lands in the south half of said block west of the original right of way by the language, "*also* all the land situated west of the route of said road." Why may not a theory different from that of either counsel be correct? viz.: that the six-rod strip so conveyed is in excess of the original right of way, and lying on both sides of it, or three rods east and three rods west of it. This would be a construction strongly against the grantor, and the only difficulty with it is, that it divides the strip and makes two strips instead of one. It is impossible to ascertain the location and boundaries of the six-rod strip by anything in the deed, or by reference to anything else. There is an inexplicable and incurable uncertainty in the description of this strip of land, amounting to a patent ambiguity. On the other hand, there is a certainty of description of the other land granted by the same deed in the language, "and also all the land in the south half of said block west of the route of said road," if the six-rod strip is thrown out of the question. If the company, by this construction of the deeds, is deprived of an additional one rod in width of land west of its original right of way, that was not intended to be conveyed to Engerud, it is attributable to an inexcusable blunder in conveyancing.

*By the Court.*— The judgment of the circuit court is affirmed, with costs.

A motion for a rehearing was denied September 21, 1880.