TAYLOR, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*November 19 — December 6, 1892.*

*Railroads: Condemnation of land: Highways: Title of abutting owners: Validation of defective plat: Unlawful digging of canal: Nuisance: Prescription: Abandonment of easement.*

1. A defectively executed plat having been validated by ch. 348, Laws of 1883, the beneficial interest in the fee of the streets therein, subject only to the public right of way, was in the owners of abutting lots, at least from the time the plat became valid.

2. A canal excavated by a corporation, without lawful authority, in a street shown upon a defectively executed plat, was a private nuisance to owners of lots abutting on such street, who had purchased according to the defective plat and had, at least, a private right of way over the street; and there could be no prescription for such nuisance.

3. If, by its continued occupation of such street, the corporation acquired any right, it acquired only the easement to maintain the canal therein. That having been lost by abandonment, and the beneficial interest in the fee of the street, subject only to the public right of way, having been vested in the abutting lot owners by the validation of the plat, a subsequent conveyance of the property and rights of the corporation to the city did not carry any right in the fee of the street, and the city could not, therefore, grant to a railway company the right to lay its track over the former site of the canal without making compensation to the owners of abutting lots.

4. A part of the width of the street was not occupied by the canal, and was constantly used as a highway after 1848. The canal was abandoned in 1883, and was filled up by the owners of abutting lots, and its site became a part of the traveled street. *Held*, that this was sufficient to establish the character of the street as a public highway, in which, to the center thereof, an abutting lot owner had such an interest as would entitle him to compensation from a railway company laying its track therein.

Taylor vs. The Chicago, Milwaukee & St. Paul R. Co.

APPEAL from the Circuit Court for *Milwaukee* County.

In 1885 the *Chicago, Milwaukee & St. Paul Railway Company* laid one of the tracks of its railroad diagonally, from southwest to northeast, across Commerce (formerly Water) street, in the Second ward of the city of Milwaukee, and has ever since used and operated the same. This track is laid across the northwest corner of lot 4, block 32, if such lot extends west to the center of the street. Such block is platted between Commerce street on the west and Milwaukee river on the east thereof.

In 1890 the plaintiff, claiming to be the owner of said lot 4 and the adjoining lot 5 in the same block, presented his petition to the circuit court, under sec. 1852, R. S., for the appointment of commissioners to appraise the damages to such lots by reason of the laying and operating of such track. He represented in his petition, and the fact is, that the railway company never instituted condemnation proceedings in respect to such lots. The company resisted the petition, and denied plaintiff's title to the land occupied by the track. After a hearing the court held that plaintiff was the owner of the *locus in quo* and entitled to maintain the proceedings, and granted the petition. The commissioners appointed for that purpose afterwards made an appraisal and award of such damages. Both parties appealed therefrom to the circuit court. For a more full statement of the procedure in the matter thus far, see *Taylor v. C., M. & St. P. R. Co.* 81 Wis. 82, which involved the question of the regularity of certain orders growing out of such condemnation proceedings.

A trial of those appeals in the circuit court resulted in a verdict and judgment for plaintiff for increased damages. This appeal is by the railway company from such judgment. The facts are further stated in the opinion.

*C. H. Van Alstine*, for the appellant, contended, *inter alia*, that there is no actual proof that the canal company

acquired title by gift or grant or by proceedings under its charter, but it is submitted that it having been in the actual continued possession and occupation of the lands occupied by its canal for more than forty years, the presumption is conclusive that it obtained title in one of the ways authorized by its charter, unless there was something to estop it from acquiring title. After seizure and continuous possession for forty years the presumption is conclusive that the damages were assessed and tendered or were waived. *Blair v. Kiger*, 111 Ind. 193, 194; *Brookville & M. H. Co. v. Butler*, 91 id. 134; *Nelson v. Fleming*, 56 id. 310. From a continuous possession of thirty years, a conveyance will be presumed. *Snell v. Fewell*, 64 Miss. 655. The canal company having been in the continuous possession of the land occupied by its canal for more than twenty years acquired title by adverse possession, unless there was something to preclude it from acquiring title. Twenty years adverse possession transfers the title. *Knox v. Cleveland*, 13 Wis. 245; *Bartlett v. Secor*, 56 id. 520. If the canal had actually been constructed in an established street the possession of that street might be adverse as against the municipal corporation, and the latter might abandon the street. Here for more than forty years the canal company was in the exclusive and continuous occupation of the lands in question, claiming title thereto. This is conclusive both as to the question of loss of title by adverse possession and as to the question of abandonment. *Wheeling v. Campbell*, 12 W. Va. 36; *Sadtler v. Peabody H. Co.* 66 Md. 1; *Houston & T. C. R. Co. v. Travis Co.* 62 Tex. 16; *Fort Smith v. McKibbin*, 41 Ark. 45; *Forsyth v. Wheeling*, 19 W. Va. 318; *Rowan v. Portland*, 8 B. Mon. 232, 259; *Alves v. Henderson*, 16 id. 131; *Cincinnati v. First Presb. Church*, 8 Ohio, 298; *Cincinnati v. Evans*, 5 Ohio St. 594; *Evans v. Erie Co.* 66 Pa. St. 222; *Knight v. Heaton*, 22 Vt. 481; *Litchfield v. Wilmot*, 2 Root (Conn.), 288; *Peoria v. Johnston*, 56 Ill. 45; *Pella v.*

*Scholte,* 24 Iowa, 285; *Callaway Co. v. Nolley,* 31 Mo. 393; *Big Rapids v. Comstock,* 65 Mich. 78; *Gregory v. Knight,* 50 id. 64; *Coleman v. F. & P. M. R. Co.* 64 id. 160; *Baker v. Johnson Co.* 33 Iowa, 151.

*N. S. Murphey,* for the respondent, argued, among other things, that the digging of the ditch in Commerce street for the purpose of supplying water to the mills and manufactories on its line was *ultra vires* and the creation of a nuisance in Commerce street. No length of time will legalize a nuisance or afford any title by prescription or user to the party maintaining it. *Att'y Gen. v. Revere Copper Co.* 152 Mass. 452; *Comm. v. Upton,* 6 Gray, 473; *Morton v. Moore,* 15 id. 573; *New Salem v. Eagle Mills,* 138 Mass. 8. Where no express grant can be allowed the law will not resort to the fiction of an implied grant so as to create a prescriptive right. *Burbank v. Fay,* 5 Lansing, 397, affirmed 65 N. Y. 57; *Staffordshire C. N. v. Proprietors B. C. N.* H. L. 1 E. & I. App. Cas. 254; *Rochdale C. Co. v. Radcliffe,* 18 Q. B. 287; *Ellwell v. Proprietors B. C. N.* 3 H. L. Cas. 812; *Grand Surrey C. Co. v. Hall,* 1 Manning & G. 392; *Waterloo W. M. Co. v. Shanahan,* 128 N. Y. 361; *Knickerbocker I. Co. v. Schultz,* 116 id. 388; *Donahue v. State,* 112 id. 145.

Lyon, C. J. On the appeal in the condemnation proceedings, reported in 81 Wis. 82, it was held that the adjudication therein by the circuit court that plaintiff was the owner in fee simple of the *locus in quo* upon which the railway company had laid and was operating its track in Commerce street is at least *prima facie* evidence of such ownership. The circuit court gave that effect to such adjudication on the trial of the appeals from the award of the commissioners, leaving the railway company at liberty to disprove such title. Inasmuch as the question of title was fully litigated on the trial, and the testimony preserved in the record, the ruling is of little importance. However, we see no good grounds for doubting its correctness.

That the plaintiff is, and for many years has been, the owner of lots 4 and 5, in block 32, is abundantly established. The question is whether, by reason of such ownership, he takes title to the center of Commerce (formerly Water) street, or has such an interest in the street as will entitle him to maintain condemnation proceedings against the railway company, which has laid his tracks in front of his lots as platted, and east of the center of the street. If he has such title or interest, the 'railway company has taken his property for public use; otherwise, it has not. In the latter cóntingency he cannot maintain condemnation proceedings because the track was legally laid in the street under and by virtue of competent authority, to wit, sec. 1828, R. S., subd. 5, and an ordinance duly passed by the mayor and common council of the city of Milwaukee, September 13, 1886. Hence the case is not within the provisions of ch. 255, Laws of 1889 (S. & B. Ann. Stats. sec. 1296a), which extends, in certain cases, the remedy of lot owners whose lots abut public streets in which railway companies have laid their railroad tracks. This subject is fully considered, and the act of 1889 construed, in *Sinnott v. C. & N. W. R. Co.* 81 Wis. 95.

So it becomes a controlling question in the case whether the plaintiff's title by virtue of his ownership of lots 4 and 5 is restricted to the east line of Commerce street, or extends to the center of that street. The land included in the street and in those lots, together with a large quantity of land adjacent thereto, was, in October, 1835, the sole property of Byron Kilbourn. At that date Kilbourn made and recorded a plat of such lands, dividing the same into lots, blocks, streets, etc., and designating therein the plaintiff's lots as lots 4 and 5, in block 32. The street now known as Commerce street was designated on the plat as Water street. The court had this plat under consideration in *Williams v. Milwaukee I. E. Asso.* 79 Wis. 524. It was there held that although the plat was defectively executed

Taylor vs. The Chicago, Milwaukee & St. Paul R. Co.

and originally invalid for that reason by the laws of Michigan territory in force here when it was executed, the same was rendered valid by the enactment of ch. 348, Laws of 1883 (S. & B. Ann. Stats. sec. 2206a). The judgment in that case is controlling here. The grounds thereof are sufficiently stated in the opinion by Chief Justice COLE, and a repetition of the discussion is unnecessary. It must be held that the Kilbourn plat is valid, and was so when the railway company laid its track in Commerce street.

The plat being valid, the fee, or the beneficial interest therein, to the center of the street, is in the owners of abutting lots, subject only to the public right of way. At least this has been so from the time the plat became valid by the enactment of ch. 348, Laws of 1883, even if the same did not thereby become valid by relation from the time it was recorded. The plaintiff is therefore the owner in fee of the street to its center, opposite his lots, or had the entire beneficial interest therein, subject only to the public easement, unless something intervened before the enactment of ch. 348, Laws of 1883, to prevent the vesting in him of such title or interest. This proposition is established by a long line of cases in this court, commencing with the case of *Kimball v. Kenosha*, 4 Wis. 321. If plaintiff is the owner of the entire beneficial interest in the fee of the street to its center, opposite his lots, subject only to the right of way held in trust for the public by the county under the Michigan statute (Rev. Laws of 1827, p. 278, § 2), and by the city of Milwaukee under our statute (R. S. sec. 2263), it requires no argument to demonstrate that he has an interest therein — no matter by what name such interest is called — which will support condemnation proceedings to recover compensation for the taking of his property for public use by authority of law.

We are thus brought to inquire whether anything has intervened to prevent the vesting in the plaintiff of the

beneficial interest he would otherwise have in the fee of the street. The learned counsel for the railway company ingeniously maintains that, in the operations of the Milwaukee & Rock River Canal Company upon the *locus in quo*, he has found that which excludes the plaintiff from any such interest, and defeats his right to condemnation proceedings against the railway company.

The Milwaukee & Rock River Canal Company was incorporated by an act of the territorial legislature approved January 5, 1838 (Laws of 1838, No. 23, p. 181). The object of creating such company was, as its name imports, to secure the construction and maintenance of a navigable canal, or slack water navigation, from Milwaukee to Rock river. The company was required by the act to commence the construction of the canal within three years from the passage of the act; failing which the act was to become null and of no effect. It was also provided that the right to construct so much of the canal as should not be constructed in ten years from the passage of the act should be forfeited by the company. Sec. 22.

Before 1843 the company built a dam across Milwaukee river, in the city of Milwaukee, and turned the waters of the river into a canal about one mile in length, which it excavated from the dam south, along and in Water street, thus creating water power. It leased such power to divers persons for propelling mills and machinery. The only discharge of water from the canal into the river was through the mills erected thereon. It is part of the history of the state, and a matter of common knowledge, that the canal company never did any more actual work towards the construction of a canal for the purposes of navigation. Probably such water-power canal in Water street, and the dam, might have been utilized for the purposes of navigation had the canal contemplated by the charter of the company ever been constructed, but they were never used for any

Taylor vs. The Chicago. Milwaukee & St. Paul R. Co.

such purposes. This water-power canal occupied all of Water street, except a narrow strip on the east side thereof, which seems to have been constantly used by the public as a highway during the whole time the canal remained there. No authority or license to the canal company thus to use the street is shown. The canal company continued to maintain such water-power canal, and collect water rents, until 1883, when the dam washed out, and was not rebuilt. The canal was then abandoned by the company, and afterwards filled up by the owners of lots abutting it, and thereupon the site of it became part of the traveled street. It does not appear that the city authorities did any work on the street until 1885. The portion of the street opposite lots 4 and 5, taken and used by the railway company, was included within the limits of the canal.

The operations of the canal company from 1838 to the formation of the state government in 1848, as shown by the proceedings of the territorial legislature during those years, and numerous reports of the officers of the company, is a prominent feature in our territorial history. Elaborate records of those operations may be found in Lapham's Documentary History of that company, published in 1840; in volume 3 of Gen. William R. Smith's Documentary History of Wisconsin (page 554 and following), published in 1854; and in Strong's History, of Wisconsin Territory, chapter 30. From these sources of information it may be gathered that the whole amount expended on the canal, including superintendence, up to January, 1, 1848, was less than $57,000, and that with the exception of surveying routes for the proposed canal, and constructing the dam and water-power canal in question, the operations of the company consisted largely in swelling the volume of documentary history of the territory of Wisconsin.

On November 6, 1885, the canal company, by deed duly executed, granted and conveyed to the city of Milwaukee

all its property and property rights, including whatever rights or easements it had in Water or Commerce street. This conveyance was authorized by ch. 91, Laws of 1885.

The contention on behalf of the railway company is that the possession and occupancy of the street by the canal company for the purposes of its canal were adverse to the plaintiff, his grantors, and the public, and that by reason of the uninterrupted continuance of such adverse occupancy for more than twenty years the canal company became the absolute owner in fee of the portion of the street thus occupied by it, which includes the portion claimed by plaintiff, on which the railway track was laid; and, further, that under the conveyance by the canal company in 1885 the city succeeded to such absolute ownership thereof, and had full and exclusive authority to grant the right to lay the railway track over the former site of the canal.

We think the above claim is untenable. The canal company excavated its canal in Water street without lawful authority, and was a trespasser. But for the fact that the original plat was defectively executed, the *locus in quo* would have been a public highway and the canal therein a public nuisance from the first. Moreover, it was a private nuisance to the owners of lots abutting Water street; for they purchased by the defective plat, and, had at least a private right of way over Water street, and the canal was an unlawful interference with that right. It was held in *Meiners v. Frederick Miller Brewing Co.* 78 Wis. 364, that there can be no prescription either for a public or private nuisance.

But, if the canal company acquired any rights under its occupation of Water street, it only acquired the easement to maintain its canal therein. That was lost by abandonment in 1883, and, as we have already seen, the entire beneficial interest in the fee of the street, subject only to the public right of way, vested in the abutting lot owners in

Taylor vs. The Chicago, Milwaukee & St. Paul R. Co.

that year, if not before.  Hence the conveyance by the canal company to the city of Milwaukee in 1885 carried no rights in the fee of the street, for that company had none to convey.

It is immaterial when the city formally accepted the dedication of Water or Commerce street as a public highway by entering upon and· improving the same.  All of it not occupied by the canal has been used as such highway since 1843.  The balance thereof has been so used since the canal was filled in 1883.  This is sufficient to establish its character as a public highway, to the center of which, opposite his lots, plaintiff has title or an interest therein which entitles him to maintain condemnation proceedings.

The foregoing observations dispose of the reasons urged for a reversal of the judgment adversely to the contention of counsel for the railway company.

*By the Court.*— The judgment of the circuit court is affirmed.