TRAEGER (Clarence) and wife, Respondents, v. TRAEGER (Marvin) and wife, Appellants.

*June 7—June 30, 1967.*

For the appellants there was a brief by *Kaftan, Kaftan & Kaftan,* and *Arthur Kaftan,* and oral argument by *Fred F. Kaftan,* all of Green Bay.

For the respondents the cause was submitted on the brief of *Clarence Traeger* of Juneau and *Eberlein & Eberlein* of Wausau.

HANLEY, J. The following issues are presented on this appeal:

(1) Do the plaintiffs have good title by deed;

(2) what kind of interest did the defendants obtain in the 18-foot strip by virtue of the quitclaim deed dated December 16, 1953; and

(3) did the plaintiffs acquire title by adverse possession of a ten-year period under color of title?

The amended complaint asked that plaintiffs' title to an 18-foot strip of land be established against any claim of defendants.

The facts are not in dispute.

The original grantors of the parties were Frank Traeger, Kenneth Traeger, and Lucille Traeger, his wife.

Five deeds were submitted to the trial court to determine the issue and are identified by number.

Deeds 1 and 2 are the significant and primary deeds to resolve the legal issue of title between the parties to the 18-foot strip.

The lands owned by the defendants lie north of the lands owned by the plaintiffs.

Prior to 1941 the outlet stream from Big lake to Mud lake (also designated Kenny lake) ran through lands now owned by the defendants. Also, in 1941, a ditch was dug through the lands now owned by the plaintiffs which thereafter became the outlet when the old creek was closed. The new creek is referred to in the deeds of conveyance as a ditch. The old creek is now filled with soil and laid out in lots owned by the defendants. In 1953 the defendants obtained a deed of conveyance for the land north of the plaintiffs' land, including the area where the old creek was located.

On February 14, 1957, the public service commission found the stream to be relocated, found the old and new streams to be nonnavigable, and ordered a permanent obstruction (a dam) to be built near the outlet of Big lake at a fixed minimum level. The dam was built by the plaintiffs with financial help from the grantors.

Deed 1, dated September 30, 1949, from Frank Traeger, Ken Traeger and Lucille Traeger, his wife, to the plaintiffs conveyed a piece of land in "the Southwest Quarter (SW ¼) of the Southeast Quarter (SE ¼) of Section No. Two (2) in Township No. Twenty-eight (28) North, of Range Fourteen (14) East" in Shawano county.

The point of contention in the 1949 deed is the following language:

". . . Except a strip of land Eighteen (18) feet wide which shall be reserved for a ditch. The center line of said ditch being parallel to and Seven Hundred seven (707) feet north of the south line of Forty."

The question is presented whether or not by the language of the deed the 18-foot strip was conveyed in fee with a reservation for flowage purposes or whether said drainage ditch was excepted altogether from the conveyance.

The trial court stated in its memorandum decision that:

"The center line of the ditch would then be wholly within and almost midway between the north and south boundaries of the land conveyed. Whether it was considered excepted or reserved from the conveyance seems immaterial. In neither case would title to the strip pass by any conveyancing words of that deed."

We do not agree with the trial court's conclusion that in neither case would title to the strip pass by deed.

In the instant case it appears the grantors were concerned about reserving to themselves a flowage right until such time as the public service commission determined that the new outlet should be established as the outlet. Such determination would create a public right of flowage.

In *Towne v. Salentine* (1896), 92 Wis. 404, 407, 66 N. W. 395, this court said:

". . . This claim is based on the principle that in the construction of a deed the part excepted from the grant is held to be something not granted and which does not pass at all from the grantor making the exception, unlike a reservation, which is the taking back of something included in the grant. *Fischer v. Laack,* 76 Wis. 313; S. C. 85 Wis. 280; *Rich v. Zeilsdorff,* 22 Wis. 544."

In *Biles v. Tacoma, O. & G. H. R. Co.* (1893), 5 Wash. 509, 511, 512, 32 Pac. 211, the court stated:

"While it is true that there is a technical legal distinction between an exception and a reservation, it is also true that whether a particular clause in a deed will be considered an exception or a reservation depends not so

much upon the words used as upon the nature of the right or thing excepted or reserved. . . .

". . . And the meaning can best be arrived at by ascertaining if possible the intention of the parties, as evidenced by the words of the deed, the object they had in view, and the circumstances under which the deed was executed."

The court in *Zimmerman v. Kirchner* (1911), 151 Iowa 483, 486, 131 N. W. 756, when considering the definition and application of the words "exception" and "reservation," said:

"As to this general rule of construction, there is no question. But such rule is not arbitrary nor is it permitted to override the real intent of the parties as such intent may be ascertained from the instrument as a whole. It is a matter of common observation to the courts, that these terms are in fact frequently used by nonprofessional men interchangeably and synonymously, and the courts can not lean too heavily upon the nicer distinction between them."

The deed of 1949 clearly conveyed to the plaintiffs the area described in its entirety with an exception. The exception provided for a particular use to be made of the 18-foot strip, namely, a drainage ditch. This was in effect a reservation and not an exception of title to the 18-foot strip.

The language in the 1949 deed merely created an easement in the grantors by reservation which permits the maintenance of the ditch on the 18-foot strip. The later quitclaim deeds, 4 and 5, dated February 16, 1963, and August 30, 1963, respectively, gave the whole of the land described in deed 1 to the plaintiffs without exception. These deeds released the easement reserved, there being no other particular purpose shown for the giving of the two quitclaim deeds.

At this time there was no further need for private flowage rights since public rights were now afforded by action of the public service commission.

With respect to the next issue, the defendants' claim of title in the 18-foot strip is based on deed 2 which is a quitclaim deed, dated December 16, 1953, the grantors being Frank Traeger, Ken Traeger and Lucille Traeger, his wife, and the grantees being Marvin Traeger and Martha Traeger, his wife.

The sixth numbered exception set forth in deed 2 reads:

"6. An 18 ft strip of land is reserved for channel between Big and Kenny Lakes either where is [sic] now exists or whereever [sic] the parties may agree to place the same. This channel is reserved to joint ownership of both the grantors and grantees."

The trial court said in regard to certain wording in defendants' deed of December 16, 1953, that:

". . . The language that 'This channel is reserved to joint ownership of both the grantors and grantees' is not comprised of words of devise or conveyance. The language is subject to judicial interpretation consistent with the true intent of the parties. The court interprets the language not in terms of a conveyance to the defendants of joint title to the 18-foot strip, but simply as an assignment of right to benefits thereto as a drainage channel as it might affect the lands actually conveyed. The court concludes that it was not the intent of the grantors to convey any title to the strip to the defendants by the terms of deed No. 2. The use of the words 'joint ownership' is unfortunate because it permits or invites an erroneous interpretation that a conveyance of interest or transfer of title was intended when consideration of the entire transaction wholly disproves it."

The trial court obviously found, and correctly so, ambiguities in the deed of 1953.

We think the trial court is correct in holding that judicial interpretation was in order to find the true intent of the parties and that consideration of the whole transaction was proper.

As the trial court stated, the ditch is located wholly within the lands originally deeded to the plaintiffs. No real purpose can be ascertained as to why it would be necessary or appropriate to convey title to this strip to the defendants. To hold that defendants have good title would create an illogical result.

In such a situation, where the drainage ditch was located inside the boundaries of another's land, if conveyance to the defendants had been desired, the grantors would have used appropriate and clear words of conveyance.

The trial court's interpretation of the language "joint ownership" as meaning only joint use of the strip as a drainage ditch appears to be the better interpretation.

In addition, defendants contend that Wisconsin case authority supports their argument that the 1949 deed to the plaintiffs excepted the 18-foot strip, rather than having reserved the strip for use as a ditch, citing *Towne v. Salentine, supra,* and *Pritchard v. Lewis* (1905), 125 Wis. 604, 104 N. W. 989.

In *Towne v. Salentine, supra,* this court held that when one, on the same day, makes two conveyances and one deed used the word "except" and the other uses "reserve," then the words are properly given their usual meaning. Such is not the case at hand where both words are used ambiguously in both the 1949 and the 1953 deeds.

Similarly, in *Pritchard, supra,* the court found that one could not "except" and "reserve" a strip of land at the same time. Two deeds were executed to Pritchard and Lewis on the same day, both deeds utilizing the words "excepting" and "reserving." The court construed the first deed as having conveyed the fee to Lewis, reserving in the grantor the right to use the strip of land involved. The second deed, therefore, could not convey title to that strip of land, and so the court rightly held that the deed to Pritchard created an exception. This case

is not good authority for the defendants and is, in fact, more applicable to the plaintiffs' argument in view of our conclusion that the language in the 1949 deed conveyed title to the plaintiffs with a reservation of the 18-foot strip for drainage purposes.

Having concluded that the plaintiffs obtained good title to the 18-foot strip by deed 1, dated September 30, 1949, we do not reach the issue with respect to adverse possession.

*By the Court.*—Judgment affirmed.