POLLNOW, and wife, Appellants, v. DEPARTMENT OF NATURAL RESOURCES, and others, Respondents.†

Supreme Court

*No. 76–009.   Argued November 27, 1978.——Decided March 27, 1979.*
(Also reported in 276 N.W.2d 738.)

† Motion for reconsideration denied, without costs, on May 15, 1979.

For the appellants there was a brief by *David J. Smith* and *O'Melia, Melby, Smith & Schiek,* S.C., of Rhinelander, and oral argument by *David J. Smith.*

For the respondents the cause was argued by *John E. Kofron,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

DAY, J. This is an appeal by Oscar W. Pollnow and Dorothy Pollnow, his wife, from a judgment of the Oneida County Circuit Court, the Honorable Ronald D. Keberle, presiding, entered March 10, 1976 determining that the State of Wisconsin has a fee simple absolute in a disputed parcel of land, and from an order entered June 14, 1976 denying the Pollnows' motion for relief from the judgment or for a new trial. The strip of land was formerly a segment of the right of way of the Milwaukee Road and runs through Pollnows' land.

The questions raised on appeal are:

1. Was the railroad granted a right of way across the plaintiffs' land by the Railroad Right Of Way Act of 1875?

2. Did the railroad acquire a fee simple absolute in the property occupied by its right of way by adverse possession, or is the interest in the right of way merely an easement?

3. If the railroad acquired only an easement by prescription through adverse possession, can that easement be conveyed to the state?

4. Did the clause in the deed excepting and reserving the railroad right of way except the land beneath the right of way from the conveyance?

We conclude that the railroad acquired only an easement in the disputed property, and that the state did not acquire good title when it obtained quitclaim deeds from the Milwaukee Road and from the Pollnows' predecessor in the title.

The plaintiffs, Oscar and Dorothy Pollnow bought a parcel of land in Oneida County on January 18, 1971 from the estate of Jacob Cook. The parcel is in Government Lot 4, Section 1, Township 37N, Range 6E. A right of way ran across the property and was used and maintained by the Milwaukee Road until 1973.

Government Lot 4, in Section 1, Township 37 North, Range 6 East, Oneida County, was conveyed by the United States to Jesse Russell, by patent dated June

30, 1884. In 1887, the Chicago, Milwaukee and St. Paul Railway Co. built a railroad across that parcel. Pursuant to 43 U.S.C. sec. 937,[1] the railroad filed a profile map of its right of way with the Secretary of the Interior in 1887. The map was approved by the United States government in 1887.

In 1973, the railroad was permitted to abandon the line by the Public Service Commission and the Interstate Commerce Commission. The State of Wisconsin Department of Natural Resources bought the railroad right of way by quitclaim deed from the Milwaukee Road in 1973 to provide a state park trail from Minocqua to Heafford Junction. The trail is to be used for bicycles and hikers in the summer, and snowmobiles in the winter. The railroad tracks have been removed from the property.

In September, 1975, after the commencement of this action, the state obtained a quitclaim deed from Jane Strong (nee Jane B. Tews) who was a predecessor in title to the Pollnows. Ms. Tews had acquired the parcel of land (including the parcel now owned by the Pollnows) by quitclaim deed on March 1, 1937. On April 16, 1937, she conveyed her interest in the entire parcel by

---

[1] "Any railroad company desiring to secure the benefits of sections 934–939 of this title shall, within twelve months after the location of any section of twenty miles of its road, if the same be upon surveyed lands, and, if upon unsurveyed lands, within twelve months after the survey thereof by the United States, file with the officer, as the Secretary of the Interior may designate, of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way: Provided, That if any section of said road shall not be completed within five years after the location of said section, the rights herein granted shall be forfeited as to any such uncompleted section of said road. Mar. 3, 1875, c. 152, §4, 18 Stats. 483; 1946 Reorg. Plan No. 3, §403, eff. July 16, 1946, 11 F.R. 7876, 60 Stat. 1100."

special warranty deed to Jake Cook. However, the deed contained the following language:

"There is excepted and reserved from this conveyance the right of way of the Chicago, Milwaukee and Saint Paul Railway as the same now crossess (sic) said premises."

The Pollnows bought their 18.3 acre parcel from Cook, "subject to an easement for the existing railroad right of way."

In August, 1974, the Department of Natural Resources wrote to Mr. Pollnow, asserting its ownership of the land formerly occupied by the railroad, and warning him that he faced criminal prosecution if he did not remove his fence from the right of way. The Pollnows brought this action to quiet title to the disputed strip of land July 29, 1975.

The trial court held that the railroad had acquired a fee simple by adverse possession of the right of way, and that the state had acquired good title by the quitclaim deed from the railroad company. This appeal followed.

ISSUE #1. WAS THE RAILROAD GRANTED A RIGHT OF WAY ACROSS THE PLAINTIFFS' LAND BY THE RAILROAD RIGHT OF WAY ACT OF 1875?

43 U.S.C. Sec. 934,[2] popularly known as the General Railroad Right of Way Act of 1875, provides as follows:

"The right of way through the public lands of the United States is granted to any railroad company duly organized under the laws of any State or Territory, except the District of Columbia, or by the Congress of the United States, which shall have filed with the Sec-

[2] Repealed by Pub. L 94–579, Title VII, Sec. 706(a), Oct. 21, 1976, 90 Stat. 2793, effective Oct. 21, 1976, insofar as applicable to the issuance of rights-of-way over, upon, under and through the public lands and lands in the National Forest system.

retary of the Interior a copy of its articles of incorporation, and due proofs of its organization under the same, to the extent of one hundred feet on each side of the central line of said road; also the right to take, from the public lands adjacent to the line of said road, material, earth, stone, and timber necessary for the construction of said railroad; also ground adjacent to such right of way for station buildings, depots, machine shops, side tracks, turnouts, and water stations, not to exceed in amount twenty acres for each station, to the extent of one station for each ten miles of its road. Mar. 3, 1875, c. 152 §1, 18 Stat. 482."

It is clear that if the railroad was granted its right of way by the Railroad Right of Way Act of 1875, it was granted only an easement, not a fee. *Great Northern Railway Co. v. United States,* 315 U. S. 262, 271 (1942). To secure the benefits of the act, a railroad company must file a profile of its road with the Secretary of the Interior under 43 U.S.C. Sec. 937. The right of way passes to the railway upon approval of the profile map by the Secretary or upon actual construction of the road. *Minneapolis St. Paul and Sault Ste. Marie Railway Company v. Doughty,* 208 U. S. 251 (1908). The act, by its own terms, applied to *public* lands of the United States. The patent to the land in question was granted to Jesse Russell in 1884. The railroad's claim to the right of way does not derive from the Railroad Right of Way Act of 1875, since it did not file its profile map until 1887, the same year the track was constructed. By that time, the land was no longer public land. There is no authority for the Pollnows' argument that the right of way dates from the time the railroad company issued bonds in 1880. See 43 U.S.C. Sec. 937, *supra* at footnote 1.

ISSUE #2: DID THE RAILROAD ACQUIRE A FEE SIMPLE ABSOLUTE IN THE PROPERTY OCCUPIED BY ITS RIGHT OF WAY BY ADVERSE POSSESSION, OR IS ITS INTEREST IN THE RIGHT OF WAY MERELY AN EASEMENT?

Adverse possession is defined by Sec. 893.09, Stats. 1975, in the following manner:[3]

"893.09. **Adverse possession, what is.** For the purpose of constituting an adverse possession by a person claiming title, not founded upon some written instrument or some judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:

"(1) When it has been protected by a substantial inclosure.

"(2) When it has been usually cultivated or improved."

*Northwoods Development Corp. v. Klement,* 24 Wis.2d 387, 129 N.W.2d 121 (1964), which construed the predecessor statute to sec. 893.09, made clear that the statute carries over the common law definition of adverse possession. For possession to be adverse under sec. 893.09, it must be open, notorious, hostile and continuous for twenty years. *Id.* at 392–394.

The railroad ran its trains over the right of way on a daily basis from 1887 to 1973. It constructed and maintained a five-wire fence on either side of the center of the railroad tracks. There is no argument in this case that

[3] The adverse possession statute in effect in 1887 had the same provisions. See Annotated Statutes, 1889:

"**Adverse possession, what is.** Section 4214. For the purpose of constituting an adverse possession by a person claiming title, not founded upon some written instrument, or some judgment or decree, land shall be deemed to have been possessed and occupied in the following cases only:

"1. When it has been protected by a substantial inclosure.

"2. When it has been usually cultivated or improved.

"**Action barred by adverse possession, when.** Section 4215. An adverse possession of ten years, under sections four thousand two hundred and eleven and four thousand two hundred and twelve, or of twenty years under the two last preceding sections, shall constitute a bar to an action for the recovery of such real estate so held adversely, or of the possession thereof."

the railroad's occupation was insufficient to constitute adverse possession. Rather, the question is what is the nature of the interest that the railroad acquired.

The majority rule is that a railroad company acquires by prescription or adverse possession only an easement in a right of way. See cases collected at 127 A.L.R. 517. See also 3 *Nichols On Eminent Domain,* Sec. 11.1. Two basic lines of reasoning have been used by the courts in reaching this result. One view is that the railroad can not acquire an interest in the property broader than the use it makes of the land occupied. Another approach taken by the courts is to analogize to the interest acquired by condemnation.

In *Michigan Central Railroad Company v. Garfield Petroleum Corp.,* 292 Mich. 373, 290 N.W. 833, 127 A.L.R. 507 (1940), the issue was whether the railroad could acquire title to mineral rights beneath the right of way.

The court commented that

"railroad corporations are, in a marked degree, to be treated differently from other persons and corporations in regard to the acquisition of land by adverse possession. Property of individuals taken by railroad corporations for the purpose of constructing their roads is, in legal contemplation, taken not for private use, but for a public use, and the tenure of railroads in lands condemned for such a purpose is in the nature of a trust for public use, subject to the supervision of the government." *Id.* at 375–6.

The court also pointed out that

"[i]f, by right of eminent domain, plaintiff in this case could acquire title to mineral rights, it would be clear that such rights were based upon a showing of necessity, as otherwise there would be no authority for such proceeding under the constitution. If such rights could not be acquired by condemnation because of lack of necessity, it would disprove a title claimed to be acquired by adverse possession." *Id.* at 377.

The court concluded that under the state constitution and statutes, the company's rights would be restricted to possession for railroad purposes.

In *Galveston, H. and S.A. Ry. Co. v. McIver*, 245 S.W. 463 (Court of Civil Appeals of Texas, 1922), the court concluded that the railroad could not hold a fee title by adverse possession:

". . . the railway company never had any other than a possession for railroad purposes, the mere fencing of its right of way not adding anything to the character of its use and occupancy, nor did that act effect McIver with notice that it was thereafter holding the land adversely to him for all purposes; . . ."

The court added that even if the railroad had proceeded under the condemnation statutes, the express provisions of the statute would not have permitted the railroad to acquire a fee simple absolute, but only a right of way for railroad purposes.

Conceding that a railroad could acquire a fee by grant, the court in *Consumers' Gas Trust Co. v. American Plate Glass Co.*, 162 Ind. 393, 68 N.E. 1020, 1021 (1903) said:

"A prescriptive right, where there is no color of title, cannot be broader than the claim which the user evidences. . . . Ordinarily, at least, there is no user by a railroad company beyond a user for the purposes of right of way. A corporation which is organized under the general railroad statute is authorized to condemn only an easement." See also, *Meyer v. Pittsburgh C., C. & St. L. Ry. Co.*, 63 Ind. App. 156, 113 N.E. 443 (1916) and *Hoffman v. Zollman*, 49 Ind. App. 664, 97 N.E. 1015 (1912).

The Department of Natural Resources points out that in many of the cases relied upon by the Pollnows, there were statutes or constitutional provisions limiting the interest which a railroad could acquire. The Department urges the court, instead, to adopt the view of *Norfolk &*

*Western Railway Co. v. Bremco Mills, Inc.*, 288 N.E.2d 868 (Court of Common Pleas of Ohio, 1971). The court held that in the absence of any forbidding language in the statutes or constitution, a railroad could acquire a fee simple absolute by condemnation. The court also concluded that a railroad could acquire a fee by adverse possession, commenting:

". . . . this interpretation of law lends support to the ancient policy of promoting certainty in real estate titles and discouraging obscure and tenuous future interests." *Id.* at 872.

The state argues that Wisconsin has no statutory limitations on acquisition of title by railroads, citing sec. 190.02, Stats. 1975, which grants every public railroad corporation the powers conferred on corporations by ch. 180. Sec. 190.02(3) gives railroads power:

"To acquire all property necessary for the construction, maintenance and operation of its railroad and the stations, depot grounds, yards, roundhouses, shops, warehouses, elevators, docks and other accommodations reasonably necessary to accomplish the objects of its incorporation; to lease or otherwise dispose of any part thereof or to sell the same when no longer necessary to its use."

In addition, sec. 180.04(4) gives all corporations power as follows:

"180.04. **General powers.** Each corporation, when no inconsistent provision is made by law or by its articles of incorporation, shall have power: . . .
"(4) To purchase, take, receive, lease, take by gift, devise or bequest, or otherwise acquire, and to own, hold, improve, use and otherwise deal in and with real or personal property, or any interest therein, wherever situated."

However, sec. 1851 of the Annotated Statutes of Wisconsin, 1889, limited the interest taken by the railroad in condemnation:

"**Use, when to vest.** Section 1851. When no appeal shall be taken from any award, within the time provided by law, and the corporation shall have paid the amount thereof into the court, or filed a receipt therefor, duly signed by the owner, and acknowledged before an officer authorized to take the acknowledgement of deeds, in the office of the clerk of the court, or when, after the determination of such an appeal, the railroad corporation shall have paid into the court the amount of the judgment rendered thereon, or filed a receipt therefor as aforesaid, the clerk of said court shall make a minute of such payment, or of the filing of such receipt, at the foot of the record of the report of such commissioners, in the judgment book of said court; and thereupon the exclusive use of said premises, and every part and parcel thereof, shall vest in such corporation, its successors and assigns, *so long as used for railroad purposes,* without any other or further act, deed or conveyance; and said record, or a certified copy thereof, shall be prima facie evidence of such title, in all courts and places." (Emphasis added).

The note accompanying the statute comments that the law was amended to "limit the use for which the corporation takes land for railroad purposes, and the duration of its holding to the time of such use."

Moreover, this court said in *Falkner v. Northern States Power Co.,* 75 Wis.2d 116, 125, 248 N.W.2d 885 (1977):

"A taking for a use that is not public is unconstitutional and beyond the right even of the legislature to accomplish.

"In determining necessity, neither the legislature nor its delegate is limited to takings that are absolutely or indispensably necessary. Necessary in this context has been construed to mean reasonably necessary, reasonably requisite and proper for the accomplishment of the public purpose for which the property is sought;

necessary does not mean absolutely imperative." *Id.* at 132.

In *Czarnik v. Sampson Enterprises, Inc.,* 46 Wis.2d 541, 547, 175 N.W.2d 487 (1970), the court said:

". . . with respect to eminent domain, the general rule is that only such an estate in the property sought to be acquired may be taken as is reasonably necessary for the accomplishment of the purpose for which the proceeding is brought. Because eminent domain involves the element of compulsion, that construction must be adopted which, in the event of uncertainty, indefiniteness or ambiguity, leaves the owner with the greatest possible estate."

The meaning of the term "right of way" was construed in *Williams v. The Western Union Railway Co.,* 50 Wis. 71, 5 N.W. 482 (1880). In that case the court construed a deed in which it was held that the railroad took a fee simple in the disputed property. But the court also stated:

" 'Right of way' in its strict meaning is 'the right of passage over another man's ground' and in its legal and generally accepted meaning, in reference to a *railway,* it is a mere easement in the lands of others, obtained by lawful condemnation to public use or by purchase. Mills on Em. Dom. Sec. 110. It would be using the term in an unusual sense, by applying it to an absolute purchase of the fee simple of lands to be used for a railway or any other kind of way." *Id.* at 76.

Thus, while a railroad could get a fee simple in a strip of land under a deed, *Williams* says that normally a right of way condemned by a railway would only constitute an easement. See also *Messer v. Oestreich,* 52 Wis. 684, 10 N.W. 6 (1882).

Recently, in *Hunter v. McDonald,* 78 Wis.2d 338, 344, 254 N.W.2d 282 (1977), this court stated that the dominant owner's interest in an easement

". . . . is not an estate in land, but rather a right to use the land of another for a special purpose not inconsistent with the general property in the owner. *2 Thompson on Real Property, supra*, sec. 325. Thus, this court has stated, 'A conveyance of a right-of-way over a strip of land two rods wide is a conveyance of a right-of-way over a strip of land two rods wide, not a conveyance of the strip of land itself. Title to the land does not pass, but only the right to pass over it.' *Kleih v. VanSchoyck*, 250 Wis. 413, 418, 17 N.W.2d 490 (1947)."

We hold that the only interest the railroad gained in the right of way by adverse possession was an easement.

ISSUE #3: IF THE RAILROAD ACQUIRED ONLY AN EASEMENT THROUGH ADVERSE POSSESSION, CAN THAT EASEMENT BE CONVEYED TO THE STATE?

The general rule is that when a railroad takes an easement for railroad purposes, and subsequently abandons it, the land goes back to the original owner or his grantees. In the absence of evidence to the contrary, title is presumed to be in the abutting landowners. *Brown v. Weare*, 348 Mo. 135, 152 S.W.2d 649 (1941); *City Motel, Inc. v. State*, 75 Nev. 137, 336 P.2d 375 (1959). See also cases collected at Annot. 136 A.L.R. 296. Whether the easement has in fact been abandoned is ordinarily a question of fact. *People v. Ocean Shore Railroad*, 32 Cal.2d 406, 196 P.2d 570 (1948).

In *Taylor v. The Chicago, Milwaukee & St. Paul Railway Co.*, 83 Wis. 636, 644–645, 53 N.W. 853 (1892), this court rejected the argument that a canal company had gained a fee simple absolute by adverse possession of land occupied by its canal:

". . . if the canal company acquired any rights under its occupation of Water Street, it only acquired the easement to maintain its canal therein. That was lost

by abandonment in 1883, and as we have already seen, the entire beneficial interest in the fee of the street subject only to the public right of way vested in the abutting lot owners in that year, if not before. Hence the conveyance by the canal company to the city of Milwaukee in 1885, carried no rights in the fee of the street, for that company had none to convey."

The state would distinguish *Taylor* on the ground that the canal company had operated outside of its authority, by establishing a water power canal when it was empowered only to establish a navigation canal. In the instant case, the railroad was operating within its charter by constructing the railroad tracks. In our view, this distinction does not detract from the principle that abandonment of an easement by a public utility extinguishes the easement.

The court is aware that the 94th Congress passed Public Law 94–210, "The Railroad Revitalization and Regulatory Reform Act of 1976," which is found at 90 Stat. 31 in the United States Statutes at Large. The effective date of the act was February 5, 1976.

Sec. 809 of the Act (90 Stat. 144) deals with "Conversion of Abandoned Railroad Rights-of-Way." It directs the Secretary of Transportation to prepare a study on the conversion of railroad rights-of-way which "shall evaluate and make suggestions concerning potential alternate uses of, and public policy with respect to the conversion of, railroad rights-of-way on which service has been discontinued or is likely to be discontinued."

The Act also amends 49 U.S.C. 1a with the insertion of a new paragraph (10), providing:

"(10) In any instance in which the Commission finds that the present or future public convenience and necessity permit abandonment or discontinuance, the Commission shall make a further finding whether such properties are suitable for use for other public purposes, including roads or highways, other forms of mass transportation, conservation energy production or transmis-

sion, or recreation. If the Commission finds that the properties proposed to be abandoned are suitable for other public purposes, it shall order that such rail properties not be sold, leased, exchanged, or otherwise disposed of except in accordance with such reasonable terms and conditions as are prescribed by the Commission, including, but not limited to, a prohibition on any such disposal, for a period not to exceed 180 days after the effective date of the order permitting abandonment unless such properties have first been offered, upon reasonable terms, for acquisition for public purposes."

The Wisconsin Legislature has also acted on this subject, by passing Ch. 29, Laws of 1977, Sec. 1343 to create Sec. 195.199, Stats., giving the state Department of Transportation first right to acquire abandoned railroad property for present or future transportational, recreational or scenic purposes. Sec. 195.199[4] was effective June 30, 1977.

---

[4] "195.199 **Acquisition of abandoned property.** (1) DEFINITIONS. As used in this section:

"(a) 'Railroad' has the meaning as designated under s. 195.02 (1).

"(b) 'Railway' means a corporation described in s. 193.01.

"(c) 'State agency' means state departments and independent agencies.

"(2) The department shall have the first right to acquire, for present or future transportational, recreational or scenic purposes, any property used in operating a railroad or railway including rights-of-way and rails, ties, switches, trestles, bridges and the like located thereon, which has been abandoned. Acquisition may be by gift, purchase or condemnation in accordance with the procedure under s. 32.05. No person owning such abandoned property, including any person to whom ownership reverts upon abandonment, may convey or dispose of any abandoned property without first obtaining a written statement from the department indicating that it does not intend to exercise its right to acquire the property. Any conveyance made without obtaining such release is void.

"(3) For purposes of this section, railroad or railway property shall be deemed abandoned if:

In the case before use, the railroad line was abandoned in 1973. Public L. 94–210, and Sec. 195.199, Stats., be-

"(a) A certificate or approval of abandonment has been issued by the interstate commerce commission or any other federal or state agency having jurisdiction over the abandonment of such property and operations have been terminated in accordance with the certificate or approval; or

"(b) Such certificate or approval of abandonment is not required and the use of such property for railroad or railway purposes has been discontinued with the intent not to resume. Intent not to resume may be inferred from circumstances including, but not limited to, the following:

"1. If the property is not used for railroad purposes for 2 consecutive years.

"2. If the facilities on the property are removed or rendered unfit for service.

"3. If the property is used for other than railroad purposes.

"4. Upon its own initiative, the department may determine at any time whether the property of the railroad or railway is abandoned, and whether it is in the best interest of the state to acquire such property. The department shall make this determination within 90 days if requested to do so by any state agency, any railroad or railway, or any county or municipality in which the property is located. After a decision has been made to acquire the property or any interest therein, the department shall, within 6 months, determine the fair market value of the property and acquire the property at a price deemed reasonable by the department or make a relocation order under s. 32.05. In making its determination, the department shall consider long-range potential for use of such property for restoration of railroad service and for public transit. The department shall solicit the opinions of appropriate state agencies, affected counties and municipalities and other interested persons. The department shall give due consideration to an expressed desire by a state agency or an affected county or municipality to acquire, in whole or in part, the property under consideration. All or part of any interest in abandoned property acquired by the department under this section or under s. 66.941(7), 1975 stats., may be subsequently conveyed to another state agency or a county or municipality for transportational, recreational or scenic purposes, and the department may make such conveyances for such purposes. Any determination of the department under this section that property is not abandoned shall

came effective in 1976 and 1977, respectively, and therefore do not govern the case at bar.

The state directs the court's attention to *Faus v. City of Los Angeles*, 67 Cal.2d 350, 431 P2d 849 (1967). In that case, the California Supreme Court held that an easement used for electric railway service was not extinguished when public motor coach service was substituted. The court recognized in that case that updating the transportation system continued to serve the underlying purpose of the original easements granted in several deeds to the railway company, namely public transportation. The DNR argues here that it is entitled to continue to use the railroad right of way because it will remain a transportation corridor. However, this seems to go beyond the holding of *Faus*. To hold that the conversion from a public transportation

not preclude the undertaking of a subsequent investigation and determination concerning the same property or any portion thereof. If at any time subsequent to the acquisition of property under this section the department determines that the property is not suitable for transportational, recreational or scenic purposes, or that the property or any interest therein may be conveyed to any other person on terms which are not inconsistent with the potential use of the property for transportational, recreational or scenic purposes or which yield a benefit, including financial benefits, to the state which outweighs the benefit derived from the property if used for transportational, recreational or scenic purposes, the department may convey the property or such interest therein. The department shall give notice of its intention to make the conveyance, and state and local units of government shall have the first 6 months in which to exercise their opportunity to acquire the property or interest therein. The railroad or railway from which the property was acquired shall have the next 6 months in which to exercise their opportunity to acquire the property or interest therein. The department may adopt such rules as it deems necessary to accomplish the purposes of this section.

"(5) To the extent that the costs of acquiring abandoned property under this section cannot be properly charged to other appropriations, the department may expend moneys for that purpose from appropriations available under s. 85.08."

system to a recreational system still reflected the purpose of the original easement would, in our view, stretch the principle of *Faus* beyond reasonable limits. We make no holding as to the power of the Congress or the state Legislature to preserve the rights of the public in existing rail corridors for multiple public uses, including transportation, conservation or recreation. That question must be deferred to an appropriate case. We hold only that under common law principles the railroad easement did not survive the abondonment of the line under the facts of this case.

ISSUE #4: DID THE CLAUSE IN THE DEED EXCEPTING AND RESERVING THE RAILROAD RIGHT OF WAY EXCEPT THE LAND BENEATH THE RIGHT OF WAY FROM THE CONVEYANCE?

An exception from a grant has been held to be something not granted and which does not pass at all from the grantor, while a reservation is the taking back of something which has been included in the grant. *Traeger v. Traeger*, 35 Wis.2d 708, 712, 151 N.W.2d 681 (1967). However, while this court has recognized that there is a distinction between those terms

" 'it is also true that whether a particular clause in a deed will be considered an exception or a reservation depends not so much upon the words used as upon the nature of the right or thing excepted or reserved. . . .
'. . . And the meaning can best be arrived at by ascertaining if possible the intention of the parties, as evidenced by the words of the deed, the object they had in view, and the circumstances under which the deed was executed.' " *Traeger, supra,* 35 Wis.2d at 712–13.

The deed by which Jane Tews conveyed her interest to Jake Cook said:

"There is excepted and reserved from this conveyance the right of way of the Chicago, Milwaukee and St.

Paul Railway as the same now crossess (sic) said premises."

Even if the court were to rely on the distinction between the terms "excepted" and "reserved," the meaning of the deed would not become any clearer since both terms are used. Thus, the court must ascertain the intention of the parties. Did Ms. Tews retain a fee simple interest in the land occupied by the railroad right of way, or was she merely giving notice to her grantee of the presence of the right of way?

*Haines v. McLean,* 154 Tex. 272, 281, 276 S.W.2d 777 (1955) stated the rule that an exception of an easement from a conveyance conveys the fee to the entire parcel:

"An instrument of conveyance which conveys land definitely described in such instrument, and then excepts from such conveyance a road, railroad right of way, canal right of way, etc., as such, occupying a mere easement on, over, or across the land conveyed, conveys the fee to the entire tract, and the exception only operates to render the conveyance or grant subject to the easement."

*Shell Petroleum Corporation v. Ward,* 100 F.2d 778 (5th Cir. 1939) stood for the proposition that exceptions are construed strictly against the grantor. The reason for this rule is to avoid a construction.

". . . which would produce the unreasonable result of splitting into two pieces a tract of land, which existed as one tract, subject only to an easement, and which, in reason, must be considered to have been conveyed as such, and not to have been split into separate parts, with a thin wedge of land between." *Shell Petroleum Corp., supra,* 100 F.2d at 779.

As then Circuit Judge William Howard Taft said in *Paine v. Consumers' Forwarding & Storage Co.,* 71 F. 626, 632 (6th Cir. 1895) :

"The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many

years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of a public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots."

We find the holdings of the cases above cited persuasive and conclude that Ms. Tews did not retain a fee interest in the land occupied by the railroad right of way when she conveyed the parcel to the Pollnows' predecessor in title. As a result, the conveyances to DNR did not give the DNR title to the land. Title to the former right of way reverted to the Pollnows.

*By the Court.*—Judgment and order reversed and cause remanded for further proceedings not inconsistent with this opinion.