CZARNIK and wife, Plaintiffs and Appellants, v. SAMPSON ENTERPRISES, INC., and another, Defendants and Respondents: METROPOLITAN SEWERAGE DISTRICT of the County of Milwaukee, Interpleaded Defendant and Respondent.

*No. 174. Argued March 3, 1970.—Decided April 3, 1970.*
(Also reported in 175 N. W. 2d 487.)

For the appellants there was a brief by *Sabrowsky, Raasch, Reidenbach & Miller* of Milwaukee, and oral argument by *Frederick E. Reidenbach.*

For the respondents there was a brief by *John J. Fleming,* Milwaukee city attorney, and *Harvey G. Odenbrett,* principal assistant city attorney, and by *Schroeder, Gedlen, Riester & Moerke* of Milwaukee, and oral argument by *Ewald L. Moerke, Jr.*

CONNOR T. HANSEN, J. This litigation concerns the use of land that came into being when a tube was placed in a drainage ditch and the ditch thereafter backfilled to grade level. The cause was submitted to the trial court on an agreed statement of facts.

The parcel of land involved is seventy feet wide and extends from South Howell Avenue northwest to South

Layton Avenue. The plaintiffs allege they own the northeasterly one half of this parcel, or a thirty-five foot wide strip, which constitutes about 0.5 acres. The defendants allege to own the southwesterly one half, or thirty-five feet, of this seventy foot wide parcel of land.

The District is presently the holder of what is described as an easement to this entire strip. After the drainage tube had been installed and the ditch backfilled to grade level, the District leased the entire seventy foot strip to the defendants. Plaintiffs allege they have leased the northeasterly one half, or thirty-five feet of the seventy foot wide strip, to a third party.

The easement came into existence in 1944 when the United States government acquired the pre-existing drainage ditch outlet near General Billy Mitchell Field, which was then under its control. The easement on plaintiffs' land was acquired from their predecessors in title by condemnation and the easement on the defendants' land was acquired from their predecessors in title by negotiation. By these acquisitions, the United States government obtained "a perpetual easement for the location, construction, maintenance, operation and patrol of a right-of-way for a drainage ditch outlet in, over and upon the lands situated in the County of Milwaukee and State of Wisconsin" which included the lands that are the subject of this case.

A series of transfers resulted in the rights of the United States government finally being transferred to the Sewerage Commission of the City of Milwaukee for the benefit of the Metropolitan Sewerage District of Milwaukee County.

The defendants, in their answer, denied that plaintiffs have title and possession of the disputed thirty-five foot strip of land which comprises the northeasterly one half of the parcel, and also interposed as a defense the lease which they obtained from the District. The District al-

leges that by virtue of the 1944 condemnation it has title and complete interest in and to this thirty-five foot strip.

In determining the present interest of the respective parties to the land in question, we look first to the 1944 condemnation proceedings. The petition for condemnation, signed on October 13, 1943, sought "immediate possession" of the lands in question, and states that funds had been appropriated for this purpose. The declaration of taking, signed by Henry L. Stimson, then secretary of war, recites the public uses for which the lands were taken, and that "[t]he said lands have been selected by me for acquisition by the United States." The tract taken was set out with particularity.[1] The decree states that the land is "condemned and taken" and possession has already been surrendered to the petitioner, the United States government.

"Now, therefore, it is ordered, adjudged and decreed that the United States of America, upon the filing of said Declaration of Taking . . . and it hereby is vested

---

[1] "Tract No. 9–E That part of the NE ¼ of the NE ¼ of Section 29, Township 6 North, Range 22 East of the Fourth Principal Meridian, Milwaukee County, Town of Lake, State of Wisconsin, described as follows:

"Beginning at a point on the N–S center line of Howell Avenue, 440.77′ South of the section corner of the intersection of Howell Avenue and E. Layton Avenue; thence Northwesterly on a line bearing 45° 01′ to the left of said center line of Howell Ave., a distance of approximately 606.4′; thence Northwesterly on a line forming an included angle of 168° 30′ with the aforementioned line a distance of approximately 15′ to the projected center line of E. Layton Avenue which is also the North boundary of the Erich Winger property; thence Easterly along said projected center line of E. Layton Avenue, a distance of approximately 43′; thence Southeasterly on a line forming an included angle of about 135° 04′ with the last mentioned line, a distance of approximately 550′ to the center line of Howell Avenue; thence Southerly along said center line of Howell Avenue, a distance of approximately 49.5′ to point of beginning. Containing in all 0.5 acres, more or less."

with a perpetual easement for the location, construction, maintenance, operation and patrol of a right-of-way for a drainage ditch outlet, in, over and upon the lands situated in the County of Milwaukee, State of Wisconsin, more particularly described as follows: . . .

"And it is further ordered, adjudged and decreed that said land is deemed to be condemned and taken for the United States of America, and the right to just compensation for the property so taken is vested in the persons entitled thereto; and the amount of such just compensation shall be ascertained and awarded in this proceeding and established by judgment herein pursuant to law, the possession of the said lands having heretofore been surrendered to the petitioner herein in conformity with a previous order of this Court."

As previously stated, the interest in the lands was acquired by condemnation. The judgment decreed that the United States of America is "vested with a perpetual easement for the location, construction, maintenance, operation and patrol of a right-of-way for a drainage ditch outlet, in, over, and upon the lands . . . ." Thus, the rights held by the District are designated to be "a perpetual easement;" however, whatever this right may be called, it is, in substance, an interest in the land.

5 Restatement, *Property,* sec. 471, comment *e* to that section states that whether an estate or easement is created depends upon what privileges remain in the conveyor and whether the use created is incompatible with the retention by the conveyor of any privilege of use:

"Sec. 471. CREATION OF EASEMENTS BY CONVEYANCE CONTRASTED WITH CREATION OF ESTATES BY CONVEYANCE.

"*In determining whether a conveyance creates an easement or an estate, the following factors are important*

"(a) *the degree of precision with which the conveyance describes that part of the conveyor's land affected by it; and*

"(b) *the extent to which the conveyance limits the uses authorized by it.*" p. 2961.

"*e. Exclusive use of conveyor's land.* A conveyance which conveys the privilege of exclusive use for all purposes of all or part of the conveyor's land conveys an estate in the land. The conveyance of such a privilege denies any privilege of use to the conveyor. Such a denial is inconsistent with the retention of any present interest by him. A conveyance which gives to the conveyee the exclusive privilege of use of all or part of the conveyor's land for a particular purpose does not necessarily create an estate. Such a conveyance leaves to the conveyor privileges of use not inconsistent with the privilege of use created. Whether there exist privileges of use inconsistent with that conveyed depends upon the pervasiveness of the privilege created. Even though a conveyance may, in terms, convey the privilege of use for a particular purpose only, the privilege conveyed may be incompatible with the retention of any privilege of use by the conveyor. This will depend upon the nature of the use and the terms of the conveyance. If the privilege of use created is incompatible with the retention of any privilege of use by the conveyor, the conveyance will convey an estate rather than an easement." pages 2964, 2965.

An intent to convey an easement can, of course, be garnered from the use of that word in addition to the term "right-of-way" which has been held to constitute an easement, *Kleih v. Van Schoyck* (1947), 250 Wis. 413, 27 N. W. 2d 490. Also, with respect to eminent domain, the general rule is that only such an estate in the property sought to be acquired may be taken as is reasonably necessary for the accomplishment of the purpose for which the proceeding is brought. Because eminent domain involves the element of compulsion, that construction must be adopted which, in the event of uncertainty, indefiniteness or ambiguity, leaves the owner with the greatest possible estate. This is in contrast to a voluntary conveyance between individuals where the rule of construction in determining the extent of interest conveyed is to allow the greatest possible interest to the

grantee. 3 Nichols, *Eminent Domain,* pp. 262–264, sec. 9.2.

However, the fact the "easement" was set out with particularity, immediate possession required, and the several references to "lands" rather than rights, evinces an intent to acquire an interest in the land as long as it was used for drainage purposes and not merely a right with respect to that land. Also, when the all-inclusive language of the condemnation decree is considered, it is difficult to envision any possessory rights which remained in the grantor while the District was maintaining a drainage outlet on the premises. Building or construction of any kind by the conveyor (or plaintiffs) without consent of the United States government (or District) would be an intrusion on the interest taken. On the other hand, the decree granted possession of the tract to the United States government.

The plaintiffs argue that their burden was increased when the surface land of the entire seventy-foot wide strip was leased by the District to defendants. However, the plaintiffs chose to look at the seventy-foot strip as it now exists, rather than as it existed in 1944. The present condition of the drainage ditch came about through expenditure of public funds by the District, and the lease between the District and defendants indicates that future changes are a probability. The lease, which is for fifty years for $50,000, states in part:

". . . provided further that the property interests hereby leased are those which will not interfere with the use of said property for sewer or water course purposes as they now or may in the future exist. In the event that lessor concludes that the needs of its sewer or water course facilities should require the termination of this lease, they shall have the right to do so upon reasonable notice.

"2. The lessee hereby agrees that it will erect no buildings upon said easement, but may, in other respects, improve the same. Upon termination of this lease, all improvements become the property of the lessor.

"3. The lessor reserves the right to enter upon said property upon reasonable notice to the lessee in order to rebuild, reconstruct, maintain and otherwise take care of its present facilities located in the easement; provided, however, that if the improvements are disturbed, they will be improved at lessor's cost.

"4. All improvements installed by the lessee, and all costs of maintenance of the demised premises are to be borne by the lessee, except as herein provided.

"5. All lessee's plans for use of the property shall first be submitted to the lessor, and no use of the property shall interfere with the lessor's operation.

"6. The lessee agrees that it will save the lessor, or its component agencies, free from all actions, causes of action, claims or liabilities of whatever nature arising out of the use of said property by the lessee, and that it will save and keep the lessor free and harmless from all damages or costs because of the use of said property by the lessee."

Considering all of the circumstances, commencing with the broad language used in the 1944 decree of acquisition, and including the subsequent use and change in the character of the property by the District, and the lease between the defendants and the District with the restrictions therein, we conclude that the actions of the District do not increase the burden on the plaintiffs.

We also conclude that the lease from the District to the defendants does not constitute an abandonment of the rights and interest of the District to the property.

"*Sale or lease.* Where land continues to be used for the purpose for which it was condemned, the transfer of the right so to use it does not constitute an abandonment. So, a lease of part or whole, reserving control and possession, or the right to cancel, in the condemning company, does not constitute an abandonment; it is otherwise if the lessee is permitted to take exclusive possession." 30 C. J. S., *Eminent Domain,* p. 661, sec. 458.

The lease is consistent with the interest acquired by condemnation in 1944. The trial court properly dismissed

the plaintiffs' cause of action and dissolved the temporary restraining order.

*By the Court.*—Judgment affirmed.

HALLOWS, C. J. (*dissenting*). As I view the facts, only an easement was acquired because: (1) The express terms of the order in the condemnation suit provide the United States of America "is vested with a perpetual easement for the location, construction, maintenance, operation and patrol of a right-of-way for a drainage ditch outlet," and (2) that interest is all that was reasonably necessary for the drainage ditch. As long as the ditch remained, the government could control the "right-of-way." The problem here is created because the government changed the ditch into a conduit and created a surface which was usable for purposes other than that within the scope of the easement. This right to use the surface belongs to the fee owner of the land subject to the easement. Easements are not to be enlarged beyond their purpose. *See Stauffacher v. Sun Prairie* (1969), 43 Wis. 2d 442, 168 N. W. 2d 587, where this court held an easement for a drainage ditch did not include a storm sewer.